C. E. COCHRAN AND WIFE, HAZEL A. COCHRAN, AND DAVID S. WHITE AND WIFE, JEAN C. WHITE v. JOSEPH WILLIAM KELLER, III

No. 8629DC867

(Filed 3 February 1987)

Easements § 7.1— appurtenant easement—identity of dominant tract—jury question

> The trial court erred in directing a verdict for plaintiffs in an action to establish an appurtenant easement in a 40-foot right-of-way across defendant's land where a 1963 easement deed to plaintiffs' predecessor granted a 40-foot right-of-way across the land now owned by defendant "for the purpose of ingress and egress to property purchased by the grantee from the Breese heirs" and an intersecting 22-foot right-of-way "for the purpose of ingress and egress to the property of the grantee"; plaintiffs' predecessor owned 2 parcels of land in 1963 but purchased only one of them from the Breese heirs; the metes and bounds description of the 40-foot right-of-way did not describe a tract attached or contiguous to the parcel obtained from the Breese heirs; the parcel now owned by plaintiffs was not purchased by their predecessor from the Breese heirs; and a latent ambiguity presenting a jury question thus existed as to whether the 40-foot right-of-way was created to benefit the parcel owned by plaintiffs.

APPEAL by defendant from *Hix, Judge*. Judgment entered 13 February 1986 in District Court, TRANSYLVANIA County. Heard in the Court of Appeals 30 October 1986.

Plaintiffs instituted this action alleging ownership of an easement across defendant's land and seeking damages for defendant's alleged trespass upon this easement. Defendant answered denying plaintiffs' ownership of an easement across his property and affirmatively alleging adverse possession, the statute of limitations and abandonment.

To assist in understanding the location of the specific parcels of land involved, and the disputed easement itself, a map taken from Transylvania County Tax Map BRE-05-2, plaintiffs' exhibit A, is set out:

Cochran v. Keller

Parcel number 7, consisting of approximately four acres is owned by the defendant Joseph Keller. Parcel number 15 consisting of 3.94 acres is owned by the plaintiffs, C. E. Cochran and wife as tenants by the entirety in a nine-tenths undivided interest and David S. White and wife as tenants by the entirety in a one-tenth undivided interest. Parcel 14 consisting of 5.79 acres is owned by James C. Boozer who is not a party to this action.

Plaintiffs' evidence shows that all three parcels were at one time owned by Cornelia E. Breese. In 1901 she conveyed these three parcels (including some additional unrelated parcels) to members of the Breese family (hereinafter referred to as "the Breese heirs"). In 1925, W. E. Breese and wife, R. W. Breese, conveyed Parcel 15 to Purity Products Company. W. E. Breese and wife were not named grantees in the 1901 deed from Cornelia

Breese and the record does not reflect how they obtained title to Parcel 15. However, plaintiffs' ownership of Parcel 15 is not in dispute.

By deed dated 4 November 1953 the Breese heirs conveyed Parcel 7 to Loe Taylor. On 28 November 1953 Loe Taylor conveyed to the Breese heirs, who then owned Parcel 14, a "right of way for road" 24 feet wide across the northern margin of Parcel 7 leading from Caldwell Street to Parcel 14.

On 6 July 1955, following the dissolution of Purity Products, Purity's shareholders conveyed Parcel 15 to Carl McCrary. On that same date, Carl McCrary obtained title to Parcel 14 by deed from the Breese heirs. This deed included the "road right of way" conveyed by deed from Loe Taylor to the Breese heirs in favor of Parcel 14. It has been stipulated that the 6 July 1955 deed from the Breese heirs to Carl McCrary is the only deed of record from the Breese heirs to Carl McCrary.

On 22 February 1963 Fred C. Hunter and wife Gladys C. Hunter (defendant's predecessors in title), who then owned Parcel 7, conveyed two tracts of land to Carl McCrary. Tract I described a "right-of-way 40 feet in width for the purpose of ingress and egress to property purchased by the grantee [Carl McCrary] from the Breese heirs located in the Town of Brevard and adjoining the lands of the grantors [Parcel 7]." From the description given, the Tract I right-of-way extended from Caldwell Street across the southernmost portion of Parcel 7 to the southernmost corner of Parcel 15. (See map.) Tract II described a "right-of-way 22 feet in width for the purpose of ingress and egress to the property of the grantee [Carl McCrary]." From the description given, this right-of-way extends the length of Parcel 7 along the boundary between Parcels 7 and 15 intersecting Tract I. (See map.) On the same date, 22 February 1963, Carl McCrary and wife, Mary Jane McCrary, relinquished all of their right, title and interest in the 24 foot wide easement extending from Parcel 14 to Caldwell Street which had been previously created by the deed from Loe Taylor to the Breese heirs dated 28 November 1953.

Following Carl McCrary's death, his heirs, Mary Jane McCrary (widow), Martha McCrary McGuire (daughter), and Thomas King McCrary (son), conveyed Parcels 14 and 15 to Hazel McCormick. The deed, dated 10 November 1970, included the two rights-

of-way created by the 1963 deed from Fred C. Hunter and wife to Carl McCrary. On the same day, 10 November 1970, Hazel Mc-Cormick conveyed Parcel 15 to Martha M. McGuire. The deed included a "right-of-way 40 feet in width for the purpose of ingress and egress to the property purchased by the Grantee from the Breese heirs." The description of this right-of-way was taken from the 1963 deed from Fred C. Hunter and wife to Carl McCrary. Also, on 10 November 1970, Hazel McCormick conveyed Parcel 14 to Mary Jane McCrary. This deed also included the same 40 foot wide right-of-way and an additional "right-of-way 22 feet in width for the purpose of ingress and egress to the property of the Grantee" as described in the 1963 deed from Fred C. Hunter and wife to Carl McCrary.

On 23 April 1979 the heirs of Mary Jane McCrary, Thomas King McCrary (son) and Martha M. McGuire (daughter), conveyed Parcel 14 to James C. Boozer. The deed included a "right-of-way 40 feet in width running from the Eastern margin of [Parcel 14] to U.S. Highway 64," and a conveyance of "all right, title and interest of the Grantors in and to a right-of-way running from [Parcel 14] across the lands of Robert Brown, property known as Brevard Motor Lodge to Caldwell Street."

On 12 August 1982 Martha M. McGuire conveyed Parcel 15 to the plaintiffs. The deed included "a right of way for a road forty feet in width leading from North Caldwell Street to [Parcel 15]" as set out in the deed from Hazel McCormick to Martha McGuire dated 10 November 1970.

Defendant obtained title to Parcel 7 following numerous mesne conveyances beginning with the 1901 deed from Cornelia Breese to the Breese heirs. One of them, a 6 October 1964 deed from Fred C. Hunter and wife to Jack L. Botts and wife conveying Parcel 7, is relevant here. This deed followed the 1963 deed from Fred C. Hunter and wife to Carl McCrary which created the two subject rights of way across Parcel 7. In the deed from the Hunters to the Bottses the description excepts the two subject rights of way. All subsequent deeds conveying Parcel 7 also except these two rights of way including defendant's deed from Robert W. Brown and wife dated 1 November 1973.

Plaintiffs filed their complaint on 11 August 1983 claiming ownership of "a certain right-of-way 40 feet in width and leading

from North Caldwell Street" to Parcel 15 as described in their deed from Martha M. McGuire dated 12 August 1982. Plaintiffs alleged that for several years the defendant and his predecessors in title had "caused mobile homes to be parked in said right-of-way as permanent residences, and have paid rent for the [use of the] right-of-way in this manner." Plaintiffs further alleged that since 1973 defendant had failed to pay rent, that the plaintiffs had demanded that the mobile homes be removed but that the defendant has refused to move them.

On 11 February 1986 James C. Boozer and wife conveyed to the plaintiffs by non-warranty deed "a right-of-way for a road 40-feet in width leading from North Caldwell Street to (Parcel 15)." As the deed explains, "some question has arisen as to whether Thomas King McCrary and Martha M. McGuire had conveyed to James C. Boozer all of their interest in the right-of-way referred to in the deed to [plaintiffs]," and that "James C. Boozer desires to convey, by non-warranty deed, a non-exclusive right-of-way along the property."

The case was tried before a jury. At the close of all the evidence both parties moved for a directed verdict. The trial court granted plaintiffs' motion on the issue of existence, location and ownership of the easement and adverse possession. Defendants' motion for directed verdict was denied. The only issue submitted to the jury was the question of whether plaintiffs had abandoned their easement. The jury returned a verdict in favor of the plaintiffs on the issue of abandonment and defendant appeals.

*Ramsey, Hill, Smart, Ramsey & Pratt by Michael K. Pratt for plaintiff-appellees.*

*Prince, Youngblood & Massagee by Sharon B. Ellis for defendant-appellant.*

EAGLES, Judge.

I

Defendant assigns error to the trial court granting plaintiffs' motion for a directed verdict on the basis that "as a matter of law, the language of [the] easement is not ambiguous and that [the] easement is appurtenant to the lands of Plaintiffs." Defendant contends that the easement is not appurtenant to the lands of

the plaintiffs but appurtenant to the lands of James C. Boozer and that the trial court should have directed a verdict in defendant's favor on this issue. Alternatively, defendant argues that the language of the easement is ambiguous and that the trial court erred in not submitting the issue to the jury. We agree that the language creating the easement is ambiguous and the trial court erred in directing a verdict for plaintiffs on this issue.

A trial court may grant a directed verdict in favor of the party with the burden of proof when the credibility of that party's evidence is manifest as a matter of law. *Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). This means that the evidence must so clearly establish the facts in issue such that no reasonable inferences to the contrary can be drawn. *Id.* In *Burnette* the court listed three recurrent situations where credibility is manifest.

> (1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests.

> (2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents.

> (3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

*Id.* at 537-38, 256 S.E. 2d at 396.

Here the controlling evidence is documentary, consisting of deeds in plaintiffs' and defendant's chains of title. The disputed easement was created by express grant from Fred C. Hunter and wife to Carl McCrary in 1963. It is not disputed that the deed creates an appurtenant easement. An appurtenant easement is one created for the purpose of benefiting particular land. P. Hetrick, Webster's Real Estate Law in North Carolina Section 306 (rev. ed. 1981). It requires two tracts of land owned by two different persons. The dominant tract is the tract benefited by the easement. The servient tract is the tract burdened by the easement for the benefit of the dominant tract. *Id.* An appurtenant easement is attached to and passes with the dominant tract. The easement cannot exist separate from the dominant tract and

as a result cannot be conveyed separate from land to which it is appurtenant. *Id.* An appurtenant easement created by express grant must be described with reasonable certainty including a description of the dominant and servient tracts to be benefited and burdened. *Id.* at section 311.

An easement deed is a contract. *Lovin v. Crisp,* 36 N.C. App. 185, 243 S.E. 2d 406 (1978). When such contracts are plain and unambiguous their construction is a matter of law for the courts. *Id.* Here the easement deed is not plain and unambiguous. Tract #1 describes a right-of-way 40 feet in width for the purpose of ingress and egress to the property purchased by Carl McCrary from the Breese heirs. It has been stipulated by the parties that only Parcel 14 (now owned by James C. Boozer) was purchased by Carl McCrary from the Breese heirs. While this description in and of itself is not ambiguous, the metes and bounds description does not describe a tract of land attached to or contiguous to Parcel 14. It describes a 40 foot wide tract of land extending from Caldwell Street along the southern boundary of Parcel 7 to Parcel 15. At the time of the easement deed Carl McCrary did own Parcel 15 but he did not acquire it from the Breese heirs. Parcel 15 was purchased from the stockholders of Purity Products Co.

To further complicate matters, Tract #2 describes "a right of way 22 feet in width for the purpose of ingress and egress *to the property of the grantee* [Carl McCrary]" (emphasis added) which could include either Parcel 14 or Parcel 15 or both. However, the metes and bounds description provides for a 22 foot wide strip of land, intersecting and overlapping one end of Tract #1 and extending the length of the boundary between Parcels 15 and 7 to Parcel 14.

An instrument creating an easement should describe with reasonable certainty the easement created *and* the dominant and servient tracts to be benefited and burdened. *Hensley v. Ramsey,* 283 N.C. 714, 199 S.E. 2d 1 (1973). The description in the 1963 deed is sufficiently certain to permit location of the easement itself and identification of the servient tract (Parcel 7). However, there exists a latent ambiguity in the description with respect to the identification of the dominant tract. It is not clear from the language of the 1963 easement deed that, as a matter of law, Tract #1 was created to benefit Parcel 15 owned by the plaintiffs.

It is not clear whether the parties to the conveyance intended to create one easement or two, or whether they intended to benefit all of the lands then owned by the grantee Carl McCrary or just Parcel 14. A latent ambiguity "will not be held to be void for uncertainty but parol evidence will be admitted to fit the description to the thing intended." *Thompson v. Umberger*, 221 N.C. 178, 180, 19 S.E. 2d 484, 485 (1942). From the evidence presented at trial there exists a genuine issue of fact as to which property the parties to the deed intended to benefit. A genuine issue of fact must be tried by a jury unless the right is waived. *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). The question of intent is one for the jury and in order to ascertain that intent it is necessary to look at the subject matter involved, the situation of the parties at the time of the conveyance and the purpose sought to be accomplished. *Shingleton v. State*, 260 N.C. 451, 133 S.E. 2d 183 (1963). *See Communities, Inc. v. Powers, Inc.*, 49 N.C. App. 656, 272 S.E. 2d 399 (1980).

The credibility of plaintiffs' evidence is not manifest as a matter of law. While the controlling evidence is documentary and the authenticity of these documents is not disputed, they do not clearly establish that the easement was created to benefit plaintiffs' property. Disputed factual issues remain to be resolved by a jury. Accordingly, we hold that the trial court erred in directing a verdict on this issue in plaintiffs' favor.

## II

Defendant assigns error to the trial court granting a directed verdict in favor of plaintiffs on the issue of adverse possession. At this point we cannot decide the issue raised by this assignment of error. The propriety of the trial court's ruling on the adverse possession issue depends upon how the question of which tract of land is the dominant tract is resolved. We have reviewed defendant's remaining assignments of error and find no prejudicial error.

Reversed and remanded for a new trial.

Judges ARNOLD and JOHNSON concur.